UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONALD BLINKOVITCH,

                Plaintiff,

v.                                                  3:15-CV-1196
                                                  (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LACHMAN, GORTON LAW FIRM          PETER A. GORTON, ESQ.
 Counsel for Plaintiff
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.          EMILY M. FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

       This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 15.) This case has proceeded in accordance with General Order 18.

       Currently before the Court, in this Social Security action filed by Ronald Blinkovitch ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 11, 14.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted, in the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and Defendant's motion be denied.

I.	**RELEVANT BACKGROUND**

   A.	**Factual Background**

Plaintiff was 32 at the time of the hearing. (T. 47.) He completed high school. (*Id.*) Generally, Plaintiff's alleged disability consists of cervical spine injury, posterior lumbar fusion, degenerative disc disease, leg pain, dorsal osteophytes with attendant radiculopathy, lateral recess foraminal stenosis, anxiety, and depression. (T. 194.) His alleged disability onset date is April 18, 2012. (T. 189.) His date last insured is December 31, 2017. (*Id.*) He previously worked as an auto mechanic. (T. 21.)

   B.	**Procedural History**

On August 17, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 189.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 2, 2012 and again on May 15, 2014, Plaintiff appeared before the ALJ, Marie Greener. (T. 27-42, 43-65.) On July 8, 2014, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-26.) On September 10, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.	**The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 15-22.)  First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2017 and Plaintiff had not engaged in substantial gainful activity since April 18, 2012.  (T. 15.)  Second, the ALJ found that Plaintiff had the severe impairments of lumbar spine residuals from fusion and an adjustment disorder.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 16-18.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work.  (T. 18.)[1]  Specifically, the ALJ concluded that Plaintiff could: lift 20 pounds occasionally and ten pounds frequently; sit for a total of six hours in an eight-hour workday, and stand or walk for a total of six hours in an eight-hour work day.  (*Id.*)  The ALJ determined that Plaintiff needed to alternate sitting and standing, with sitting limited to one hour at a time.  (*Id.*)  The ALJ determined that Plaintiff needed to stand for five minute "or so" but he did not have to leave the workstation or area during the change of position.  (*Id.*)  The ALJ determined that Plaintiff could stand or walk for an hour at a time, but would then need to sit for five minutes "or so" before standing or walking again.  (*Id.*)  The ALJ limited Plaintiff to unskilled work.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 21-22.)

---

[1]  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes five separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ's finding that Plaintiff could stand or walk for most of the day as required by a light job was contrary to the medical evidence in the record. (Dkt. No. 11 at 10-14 [Pl.'s Mem. of Law].) Second, Plaintiff argues that he cannot do the sitting required by the ALJ's RFC or sedentary work. (*Id.* at 14-15.) Third, Plaintiff argues that the ALJ's credibility determination was insufficient and erroneous. (*Id.* at 15-21.) Fourth, Plaintiff argues that the ALJ did not properly evaluate treating physician opinions. (*Id.* at 21-24.) Fifth, and lastly, Plaintiff argues that the ALJ erred in her step five determination. (*Id.* at 24-25.)

### B. Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues that the ALJ's RFC finding was supported by substantial evidence. (Dkt. No. 14 at 5-12 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly weighed the medical source opinion. (*Id.* at 12-16.) Third, Defendant argues that the ALJ properly found Plaintiff's complaints not fully credible. (*Id.* at 16-21.) Fourth, and lastly, Defendant argues that substantial evidence supported the ALJ's step five finding. (*Id.* at 21.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

For ease of analysis, Plaintiff arguments will be addressed out of order and in a consolidated fashion.

### A. The ALJ's RFC Determination

Plaintiff's RFC is the most he can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In making an RFC determination, the ALJ will base her determination on an assessment of all the relevant evidence in the case record. *See id*. Further, Plaintiff's RFC is his maximum remaining ability to do sustained work activities in an

ordinary setting on a regular and continuing basis. *See id.* at § 404.1545(b)-(c). "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009).

In formulating an RFC the ALJ will afford weight to the medical opinion evidence in the record. The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 404.1527(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the treating source opinion should receive, even if it is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

7

In making her physical RFC determination, the ALJ relied primarily on the medical examination and source opinion of consultative examiner, Shannon Gearhart, M.D. and to a lesser extent the medical opinions provided by Plaintiff's treating providers, David Kammerman, M.D. and Cori Pane, F.N.P. (T. 19-20.)

On October 31, 2012, Dr. Gearhart conducted an internal medicine examination of Plaintiff and provided a medical source statement. (T. 376-380.) On examination, Dr. Gearhart observed that Plaintiff was in no acute distress, his gait was slightly antalgic, he declined to walk on heels and toes, his squat was 10% of full, his stance was normal, he needed no help changing for the exam or getting on and off the exam table, and he was able to rise from a chair without difficulty. (T. 378.) Dr. Gearhart observed that Plaintiff's lumbar spine range of motion was limited due to pain and because Plaintiff declined to remove his back brace. (T. 379.) Dr. Gearhart noted that Plaintiff declined to do a lumbar spinal rotation. (*Id.*) Dr. Gearhart observed positive straight leg raise on the right, sitting only. (*Id.*) Plaintiff had full strength in his upper and lower extremities and no sensory deficits. (*Id.*)

In a medical source statement, Dr. Gearhart stated that Plaintiff had "marked restriction for heavy lifting, carrying, pushing, and pulling." (T. 380.) She further opined that Plaintiff had "moderate to marked restrictions for prolonged walking and standing." (*Id.*) Lastly, she opined that Plaintiff had "moderate restrictions for squatting, kneeling, climbing, going up and down stairs, and prolonged sitting." (*Id.*)

On October 1, 2013, Nurse Pane completed a "Questionnaire." (T. 482-483.) Nurse Pane was a nurse practitioner with Comprehensive Pain Relief. (T. 442.) In the questionnaire, Nurse Pane indicated that Plaintiff could sit for approximately four hours

out of an eight hour workday. (T. 483.) She opined that Plaintiff could stand/walk for approximately four hours out of an eight hour workday. (*Id.*) She indicated that Plaintiff should change positions approximately every 30 minutes. (*Id.*)

On November 8, 2013, Dr. Kammerman, also with Comprehensive Pain Relief, completed a "Questionnaire." (T.493-494.) Dr. Kammerman opined that Plaintiff could sit for approximately two hours out of an eight hour workday. (T. 494.) He opined that Plaintiff could stand/walk for approximately two hours out of an eight hour workday. (*Id.*) He indicated that Plaintiff should change positions approximately every hour. (*Id.*)

Plaintiff testified at the hearing that he could sit for about forty minutes and stand for about thirty minutes. (T. 51.) In his disability report, Plaintiff indicated that he could stand "no more than 20 minutes" and sit "no more than thirty minutes." (T. 216-217.)

Plaintiff argues that the ALJ erred in her evaluation of treating source opinions because the ALJ failed to acknowledge that both providers were specialist and had an extensive treatment relationship with Plaintiff, and because both sources provided uncontradicted opinions. (Dkt. No. 11 at 21-24 [Pl.'s Mem. of Law].)

Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). Here, the ALJ's reasoning and adherence to the Regulations was clear. Although the ALJ did not specifically refer to Dr. Kammerman or Nurse Pane as "treating providers," or specifically note how often

9

they treated Plaintiff, her decision cites to the numerous treatment records and medical source statements provided by both providers. Further, in assessing the opinions of Dr. Kammerman and Nurse Pane, the ALJ provided specific reasoning for the weight she afforded their opinions. (T. 20.) Therefore, the ALJ did not commit legal error in failing to explicitly acknowledge that Dr. Kammerman or Nurse Pane were treating sources or their length of treatment because her reasoning and adherence to the Regulations was clear.

Plaintiff argues that the ALJ's RFC determination, that Plaintiff could stand/walk for six hours and sit for six hours in a workday, was not supported by medical evidence in the record. (Dkt. No. 11 at 13-15 [Pl.'s Mem. of Law].)

Light work requires "a good deal of walking or standing." 20 C.F.R. § 404.1567(b); *see also* SSR 83-10 (S.S.A. 1983) ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"); *see also* SSR 83-12 (S.S.A. 1983) (most light work requires "prolonged standing or walking"). Here, substantial evidence did not support the ALJ's RFC determination that Plaintiff could stand or walk, for an hour at a time, six hours in an eight hour work day. (T. 18.) Further, the ALJ's decision failed to provide an adequate analysis of how the evidence in the record supported her determination that Plaintiff could stand or walk for six hours with a limitation of one hour at a time.

The medical opinions in the record indicated that Plaintiff had greater restriction on his ability to stand and walk than provided for in the RFC. Dr. Gearhart opined that Plaintiff had "moderate to marked restrictions for prolonged walking and standing." (T. 380.) To be sure, a "moderate" limitation would not necessarily preclude the ability to

perform the walking and standing requirements of light work; however, a "moderate to marked" limitation does not support the determination that Plaintiff can perform the requirements.

Further, the opinions of Plaintiff's treating providers do not support the contention that Plaintiff could perform the walking or standing requirements of light work. Dr. Kammerman opined Plaintiff could stand or walk for approximately two hours out of an eight hour work day. (T. 494.) Nurse Pane opined Plaintiff could stand or walk for approximately four hours in an eight hour day. (T. 483.) Plaintiff testified that he could not stand more than "about half an hour" and could not "really walk too far without having to take a rest." (T. 51.) Plaintiff stated in his Function Report that he could stand for 20 minutes and walk ten to 20 minutes. (T. 216.) Therefore, neither the medical evidence in the record, not Plaintiff's testimony, supported the conclusion that Plaintiff could stand or walk for "prolonged" periods.

The ALJ's determination failed to provide an analysis of how the record supported the determination that Plaintiff could stand/walk for six hours in a workday. *See Otts v. Colvin*, No. 15-CV-6731, 2016 WL 6677192, at *4 (W.D.N.Y. Nov. 14, 2016) (remanding where ALJ failed to explain how consultative examiner's "moderate to marked" restriction for lifting, carry, pushing, and pulling supported an RFC to perform light work). Therefore, remand is recommended for a proper analysis of Plaintiff's ability to stand and walk.

The ALJ also determined that Plaintiff could sit, for one hour increments, for a total of six hours in an eight hour workday. (T. 18.) Substantial evidence did not support this conclusion. Although Dr. Gearhart opined that Plaintiff had a "moderate"

11

restriction for sitting, treating providers indicated Plaintiff could sit for two or four hours in a work day. (T. 483, 494.) Plaintiff testified that he could sit for about forty minutes. (T. 51.) Elsewhere Plaintiff indicated he could sit for thirty minutes. (T. 217.) Again, the medical evidence indicated that Plaintiff had greater restriction in his ability to sit for prolonged periods than accounted for by the ALJ. In addition, the ALJ failed to explain how she arrived at the conclusion that Plaintiff could sit for six hours in a workday based on Dr. Gearhart's opinion that he had a moderate restriction for sitting.

To be sure, although an "ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [her] decision, [she] was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Further, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion ..., [and] remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.' " *Lewis v. Colvin*, No. 13-CV-1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013)).

The "regulatory language provides ample flexibility for the ALJ to consider a broad array of evidence as 'medical opinions.' " *Sickles v. Colvin*, No. 12-CV-774, 2014 WL 795978, at *4 (N.D.N.Y. Feb. 27, 2014) (citation omitted). Plaintiff's testimony and the treatment notes may constitute "relevant evidence [that] a reasonable mind might accept as adequate to support" the RFC as determined by an ALJ. *Johnson v. Colvin*, No. 15-3483-CV, 2016 WL 5539890, at *2 (2d Cir. Sept. 29, 2016) (quoting *Richardson*, 402 U.S. at 401); *see also Scouten v. Colvin*, No. 15-CV-76S, 2016 WL 2640350, at *4

(W.D.N.Y. May 10, 2016) ("[t]here is no error where ... an ALJ bases his RFC on Plaintiff's own testimony" together with relevant medical evidence). Here, however, the record did not contain sufficient evidence to support the ALJ's conclusion that Plaintiff could stand or walk per the requirements of light work, or sit for six hours, even if such postures were limited to an hour at a time.

Defendant argues that the ALJ's RFC determination accounted for Plaintiff's restrictions for standing, walking, and sitting because the RFC stated that Plaintiff could not perform a position for more than an hour at a time. (Dkt. No. 14 at 7 [Def.'s Mem. of Law].) This Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Martinbeault v. Astrue*, 2009 WL 5030789, *5 (N.D.N.Y. Dec. 14, 2009) (citing *Grogan v. Barnhart,* 399 F.3d 1257, 1263 (10th Cir. 2005)); *see also Hall v. Colvin*, 37 F. Supp. 3d 614, 626 (W.D.N.Y. 2014) ("Even if accurate, this is a *post hoc* rationalization that is not apparent from the face of the ALJ's decision."); *see also Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action); *see also Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999). Although the ALJ concluded that Plaintiff could stand, walk, and sit, for an hour at a time, it is not apparent from the ALJ's decision how she arrived at this conclusion.

In addition, the ALJ appears to have misread the objective medical evidence in the record. The ALJ relied on this misreading in weighing opinion evidence and formulating her RFC determination.

To be sure, as indicated by the ALJ, the MRI performed on August 30, 2013 indicated "no disc herniation, central or foraminal narrowing at L1-L2 through L4-L4." (T. 463.) However, the ALJ either overlooked or ignored the MRI results indicating "mild abnormal hypointense T1 signal along the ventral aspect of the spinal canal which appear[ed] to abut the left more than right S1 nerve root" at L5-S1. (T. 463.) The results also indicated minimal hypointense T1 signal along the posterior aspect of the spinal canal that may represent "postoperative granulation tissue." (*Id.*) This oversite was not harmless, because Plaintiff's treating providers relied on these results in formulating treatment and medical opinions. Plaintiff's neurologist, Khalid Sethi, reviewed the MRI on October 16, 2013, and indicated that he was "not impressed with a robust incorporation" and Plaintiff's "symptoms may be partially referable to micromotion." (T. 495.) Both Dr. Kammerman and Nurse Pane indicated in their medical source statements that their diagnoses were supported by the MRI which showed granulation tissue abutting the S1 nerve root. (T. 482, 493.)

The ALJ reasoned that Dr. Kammerman's opinion, and Nurse Pane's opinion, were undermined by an MRI which showed "no disc herniation, central or foraminal narrowing." (T. 20.) The ALJ relied, in part, on the MRI findings as support for Dr. Gearhart's opinion. (T. 19.) The ALJ's reliance on a misreading of the MRI findings compounded her erroneous RFC determination.

In sum, the record did not contain sufficient evidence to support the ALJ's determination that Plaintiff could perform the standing or walking requirements of light work, or that Plaintiff could sit for six hours in a work day, even if Plaintiff was limited to those positions for an hour at a time. The ALJ's decision provided no analysis of how

14

she reached the determination that Plaintiff could perform positional requirements of light work for an hour at a time. Further, the ALJ appears to have misread or misunderstood the objective medical evidence. Therefore, remand is recommended for a new physical RFC determination.

Plaintiff also argues that there was no adverse medical opinion to Dr. Kammerman's statement that Plaintiff would be off task 33% of the day and absent more than four days a month, and as such the ALJ was required to accept the limitations. (Dkt. No. 11 at 23-24 [Pl.'s Mem. of Law].) However, the ALJ's conclusion that Plaintiff could sustain attention and concentration for unskilled work was supported by the medical opinion of consultative examiner, Cheyrl Loomis, Ph.D.

Dr. Loomis concluded, based on her examination of Plaintiff, that he was capable of following, understanding, and performing simple tasks independently. (T. 373.) She concluded that Plaintiff could maintain attention and concentration, maintain a schedule, and learn new tasks. (*Id.*) She concluded that Plaintiff could make appropriate decision, relate adequately with others, and appropriately deal with stress. (T. 374.) Therefore, the ALJ's determination that Plaintiff retained the ability to perform unskilled work was supported by the opinion of Dr. Loomis.

### B.     The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the

credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of his symptoms were not credible. (T. 19.) In making her credibility determination the ALJ first relied on Plaintiff's statement that he applied for benefits because he could not return to his past work as a mechanic. (T. 20.) Second, the ALJ stated that clinical findings and testing did not support his allegations. (*Id.*) Third, the ALJ stated that Plaintiff's statements were not fully credible because he claimed his back did not fully fuse; however, the record did not support that statement. (*Id.*) And lastly, the ALJ took into consideration that Plaintiff had previously filed for benefits and went back to work after he was denied. (*Id.*)

Plaintiff argues that the ALJ erred in her credibility determination because the ALJ failed to discuss the relevant factors outlined in the Regulations and the reasons the ALJ relied on in making her determination had no bearing on credibility. (Dkt. No. 11 at 17-21 [Pl.'s Mem. of Law].) For the reasons stated herein, the ALJ's credibility determination was the product of legal error and not supported by substantial evidence.

To be sure, the ALJ is not required to make a "slavish" recitation of each and every factor in the Regulation where the ALJ's reasoning and adherence to the Regulations is clear. *See Halloran v. Barnhart,* 362 F.3d 28, 31-32 (2d Cir. 2004). However, in the instant case, the ALJ's reasoning and adherence to the Regulations is not clear. The ALJ's discussion makes no mention or reference to any factor outlined in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

In her credibility determination the ALJ found Plaintiff to be less credible because he was not familiar with the legal standard of obtaining Social Security Disability

17

benefits. (T. 20.) The ALJ relied on a notation made by a physical therapist in September of 2012. (T. 422.) The statement was not made by the Plaintiff at the hearing or in his application. Even if Plaintiff misunderstood the disability standard, that does not equate with Plaintiff's statements being less credible. Second, as stated herein, the ALJ failed to acknowledge the MRI finding of nerve root abutment. Therefore, the ALJ erred in relying the MRI to undermine Plaintiff's credibility. Further, the ALJ's erroneously concluded that Plaintiff incorrectly stated that his back had not fully fused and was therefore not credible. (T. 20.) Plaintiff's treating source did indicate, as Plaintiff's alleged, his back had not fully fused. (T. 390-391.) The ALJ also selectively relied on one notation that Plaintiff's pain increase because he had been more active. (T. 20, *referring to* T. 524.) Outside of this one notation, the record indicated that Plaintiff complained his symptoms were aggravated by "daily activities." (*see generally* T. 346-370, T. 401-453.)

Because the ALJ made no mention of the factors outlined in the Regulations in making her credibility determination and the ALJ's adherence to the Regulations was not clear from her determination, remand is recommended for a proper credibility analysis.

### C. The ALJ's Step Five Determination

Because remand is recommended for a physical RFC determination and credibility determination, remand is recommended for a new analysis at step five.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED**, and the Commissioner's determination be **DENIED**, and the matter be

18

**REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:   January 23, 2017                                    _____
                                                                                   William B. Mitchell Carter
                                                                                   U.S. Magistrate Judge